UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEVIN JOSEPH CARROLL

                    Plaintiff,

              -against-

WELLS FARGO CLEARING SERVICES, LLC,

                    Defendants.
-----------------------------------------------------------x

20-cv-4918 (PKC)

OPINION AND
ORDER

CASTEL, U.S.D.J.

        Kevin Joseph Carroll petitions to vacate an arbitration award rendered against him and in favor of his former employer, respondent Wells Fargo Clearing Services, LLC ("Wells Fargo"). In the arbitration, Wells Fargo was awarded *inter alia* the unpaid balance on a promissory note that Carroll failed to pay.

        Wells Fargo opposes the petition and moves to confirm the award. It also seeks attorneys' fees incurred as a result of its efforts to enforce the award. Because Carroll has failed meet the "very high" burden to demonstrate that vacatur was appropriate, see <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006), his petition will be denied. Wells Fargo's cross-petition to confirm the award and its application for attorneys' fees will be granted.

BACKGROUND

        Wells Fargo is a registered broker-dealer and member of the Financial Industry Regulatory Authority ("FINRA"). (Cross-Pet. ¶ 2; (Doc 15)). Carroll was a former registered representative for Wells Fargo. (Cross-Pet. ¶ 1). On October 30, 2014, Carroll executed a promissory note with Wells Fargo for the principal amount of $1,100,000. (Mitchell Decl. Ex.

B; (Doc 16)).[1]  Under the terms of the note, a termination of Carroll's employment with Wells Fargo for any reason constituted an Event of Default.  (Note ¶ 1).  Upon the occurrence of an Event of Default, Wells Fargo "may, at is option, declare the entire unpaid principal balance of this Note immediately due and payable, regardless of any prior forbearance, and exercise any and all rights and remedies available to it under applicable law with respect to the enforcement and collection of this Note."  (Note ¶ 2).  The promissory note also contained an arbitration clause providing that any controversy arising out of the validity, enforcement or construction of the note be resolved through FINRA arbitration.  (Note ¶ 7).

On February 15, 2019, Carroll resigned from his position at Wells Fargo.  (Cross-Pet. ¶ 12).  Thereafter, Wells Fargo initiated a FINRA arbitration against Carroll on November 20, 2019.  (Cross-Pet. ¶ 18).  The statement of claim alleged that Carroll's termination of his employment with Wells Fargo constituted an Event of Default.  (Claim ¶ 12).  Wells Fargo alleged that Carroll owed $706,900.41 in principal on the note and that it had made multiple attempts to collect the unpaid principal balance.  (Claim ¶¶ 13, 15–18).  Wells Fargo asserted that Carroll breached the terms of the promissory note by failing to pay the outstanding principal balance after he resigned.  (Claim ¶¶ 23–29).

FINRA provided Carroll a claim service packet dated November 21, 2019 that included the statement of claim, information on the arbitration proceeding and how to respond, and stated that he was required to file a statement of answer on or before January 10, 2020.  (Cross-Pet. ¶¶ 19–20; Mitchell Decl. Ex. D).  Carroll failed to file a statement of answer or

---

[1] Exhibit B of the Mitchell Declaration is a copy of the Statement Claim filed by Wells Fargo in the underlying arbitration, <u>Wells Fargo Clearing Services, LLC v. Kevin Joseph Carroll</u>, FINRA Dispute Resolution No. 19-03473. (Mitchell Decl. ¶ 5).  The exhibits to the statement of claim included the executed promissory note and a calculation of the amount alleged to be due and payable under the note.  The Court's Order will cite to the promissory note as ("Note") and the Statement of Claim as ("Claim").

otherwise respond prior to January 10.  On January 13, 2020, FINRA sent Carroll a notice that his answer was overdue and informing him that the claim would now be adjudicated without a hearing:

> This office has not received Kevin Joseph Carroll's Statement of Answer. Accordingly, pursuant to Code of Arbitration Procedure Rule 13806, no hearing will be held. This case will be decided based on the pleadings and other materials submitted by the parties. Should Kevin Joseph Carroll file a Statement of Answer, this office will contact the parties to schedule a hearing. We have attached for the Respondent's review a copy of the statement of claim filed in this matter.

(Cross-Pet. ¶ 23; Mitchell Decl. Ex. E).  Between January 13, 2020, when the overdue notice was sent, and February 24, 2020, FINRA provided additional correspondence regarding the appointment of the arbitrator and the arbitrator issued an order concerning Wells Fargo's claim for attorney's fees.  (Mitchell Decl. Ex. E–Ex. J).

On February 25, 2020, Carroll filed a letter that stated in full, "I need more time on this case to respond.  There are several personal reasons for this.  I need to obtain different counsel as well.  I take this matter seriously and want to properly prepare."  (Pet. Ex. B; (Doc. 1)).  Carroll states that between the time Wells Fargo filed its statement of claim and his letter of February 25, 2020, that he "had no communications from or with the Arbitrator or Respondent." (Pet. ¶ 13).  On March 6, 2020, Wells Fargo responded and did not object to Carroll's request on condition that Carroll only be provided ten days to answer from the date of the arbitrator's order. (Pet. Ex. C).  The arbitrator denied Carroll's request for an extension on March 13, 2020.  (Pet. Ex. D).

On March 30, 2020, more than two weeks after the denial of the extension, the arbitrator decided the matter on the pleadings and other materials pursuant to FINRA Rule 13806 covering "Promissory Note Proceedings."  (Pet. Ex. A).  Carroll did not participate or make any substantive submissions.  (Pet. ¶ 21).  The arbitrator determined that Carroll was liable for the

outstanding balance due on the promissory note and also awarded Wells Fargo pre- and post-judgment interest and attorneys' fees.  (Id.)  The arbitration award identified that Carroll failed to file an answer.  It further determined that Carroll "was served with the Claim Notification letter dated November 21, 2019 by regular mail, and the Overdue Notice (including the Statement of Claim) dated January 13, 2020 by regular and certified mail as evidenced by the signed signature card on file."  (Id.)

On June 26, 2020, Carroll filed his petition, seeking vacatur of the award pursuant to section 10 of the Federal Arbitration Act ("FAA").  On October 5, 2020, Wells Fargo cross-moved for confirmation of the award and attorney's fees.  The Court granted Carroll two extensions of time to respond to Wells Fargo's Cross-petition, but he ultimately failed to make a submission to this Court beyond his initial petition.  (Docs 19 and 21).  A district court should treat an unanswered petition to confirm or vacate an arbitration award "as an unopposed motion for summary judgement."  D.H. Blair, 462 F.3d at 110.  Summary judgment is appropriate when the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.  The Court's decision is based on the record before it, specifically, Carroll's petition to vacate, Wells Fargo's cross-petition to confirm, the exhibits attached to those petitions and the parties' supporting declarations.  See D.H. Blair, 462 F.3d at 110.

DISCUSSION

    I.  Carroll's petition to vacate the arbitration award is denied and Wells Fargo's cross-petition to confirm is granted.

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [FAA].'"  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99,

103 (2d Cir. 2013) (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997)). "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" Id. at 103–04 (quoting Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008)).

The FAA provides limited grounds for vacating an arbitration award. 9 U.S.C. § 10(a). Carroll challenges the award under sections 10(a)(3) and 10(a)(4) of the FAA, which provide that the district court may vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," 9 U.S.C. § 10(a)(3); or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

Carroll argues that the arbitrator's denial of his February 25, 2020 extension request constitutes arbitrator "misconduct" for a refusal "to postpone the hearing" within the meaning of section 10(a)(3). Wells Fargo does not dispute Carroll's framing of the issue but urges that the arbitrator here was not "guilty of misconduct." In a claim under Section 10(a)(3), "[t]he granting or denying of an adjournment falls within the broad discretion of appointed arbitrators." Tempo Shain, 120 F.3d at 19 (quoting Storey v. Searle Blatt, Ltd., 685 F. Supp. 80, 82 (S.D.N.Y. 1988)). Thus, if there exists "'a reasonable basis for the arbitrators' considered decision not to grant a postponement,' a court should be reluctant to interfere with the award." Ottawa Office Integration, Inc. v. FTF Bus. Sys., Inc., 132 F. Supp. 2d 215, 220 (S.D.N.Y. 2001) (quoting Roche v. Local 32B–32J Serv. Emps. Int'l Union, 755 F. Supp. 622, 625 (S.D.N.Y.

5

1991)). "Stated another way, as long as there is at least 'a barely colorable justification' for the arbitrators' decision not to grant an adjournment, the arbitration award should be enforced." Bisnoff v. King, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001) (quoting Alexander Julian Inc. v. Mimco, 00-cv-4131 (DC), 2001 WL 477010, at *2 (S.D.N.Y. May 4, 2001)).

Under section 10(a)(3), courts must also consider whether the arbitrators "violated 'fundamental fairness' in conducting the arbitration or whether [their] ultimate decision was fundamentally unfair." Kolel Beth, 729 F.3d at 107 (quoting Tempo Shain, 120 F.3d at 20); see also Bisnoff, 154 F. Supp. 2d at 637. But an arbitrator "need not follow all the niceties observed by the federal courts." Roche, 755 F. Supp. at 624 (quoting Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, 500 F.2d 921, 923 (2d Cir. 1974)).

Here, there was a reasonable basis for the arbitrator to deny Carroll's extension request. Wells Fargo initiated the proceeding on November 20, 2019. FINRA's claim service packet stated that Carroll's deadline to answer was January 10, 2020. (Mitchell Decl. Ex. D). Carroll neither filed an answer nor sought an adjournment. After Carroll failed meet the January 10 deadline, the overdue notice mailed by FINRA on January 13, 2020 alerted Carroll that the arbitration would be decided on the pleadings under the FINRA rules. (Mitchell Decl. Ex. E). In this proceeding, Carroll does not challenge that service was inadequate or that he was not on notice regarding the arbitration.

Instead of promptly seeking to remedy his default, Carroll waited until February 25, 2020, approximately six weeks after the overdue notice was sent to him and three months after the statement of claim was filed. The extension request did not state why Carroll had failed to timely answer, how long he would need to answer, provide any details on the "personal reasons" cited in the request, or identify whether he had a meritorious defense. Since the

arbitrator did not deny his extension request until March 13, 2020, Carroll had an additional two weeks to prepare an answer. On this record, there was a "reasonable basis" or "barely colorable justification" for the arbitrator to deny Carroll's vague request for an indefinite extension over three months after the arbitration was commenced.

Additionally, the arbitrator's decision to deny the extension was not fundamentally unfair under section 10(a)(3). At the time of his extension request, Carroll had notice of the arbitration for over three months and had ample opportunity to respond to Wells Fargo's statement of claim. See Mandell v. Reeve, 2011 WL 4585248, at *4 (S.D.N.Y. 2011) (Sullivan, J.) ("Upon reviewing the record, the Court cannot conclude that it was fundamentally unfair for the arbitrators to deny Mandell's requests to postpone the hearing. . . . Significantly, [petitioner] was notified of the July 9, 2010 hearing date nearly three months prior to the hearing."). In both the underlying arbitration and the current application, Carroll fails to identify any details regarding his reasons for delay or grounds for a potential defense. Cf. Tempo Shain, 120 F.3d at 20 (concluding decision to preclude evidence violated section 10(a)(3) where "there was no reasonable basis for the panel to determine that [the] omitted testimony would be cumulative"). Notably, on his petition to vacate filed with this Court, he does not explain how long of an adjournment he needed, why he needed it or whether he had any colorable to defense to the claim in arbitration.

Carroll urges that the arbitrator's decision to deny the extension request effectively prevented him from retaining an attorney. Carroll's February 25 extension request stated that he "needed to obtain different counsel as well." (Pet. Ex. B). In Carroll's memorandum in support of his petition to vacate, he asserts that this was an "obvious error since he did not actually have an attorney in the Arbitration" and that an attorney never entered an

7

appearance on his behalf.  (Mem. at 4–5).  For purposes of his petition, the Court assumes that Carroll had not obtained counsel at the time of his February 25 extension request.  See D.H. Blair, 462 F.3d at 110.  FINRA Rule 13208(b) provides that "all parties shall have the right be represented by an attorney at law in good standing . . . unless state law prohibits such representation."  However, Carroll's petition fails to establish that the arbitrator's decision prevented him from retaining an attorney.  Prior to making the extension request, Carroll had over three months to retain an attorney and his petition fails to explain his failure to do so.  See Webb v. Citigroup Global Mkts., Inc., 2019 WL 4081893, at *9 (S.D.N.Y. Aug. 29, 2019) (Engelmayer, J.) ("While Rule 13208(b) permits a party to be represented by an attorney, nothing in the rules obliged the panel to agree to an eleventh-hour adjournment for a party to seek an attorney.").

Carroll also relies on section 10(a)(4) of the FAA.  The Second Circuit has "consistently accorded the narrowest of readings to section 10(a)(4) permitting vacatur where the arbitrator has exceeded her powers."  Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011) (internal quotation marks omitted).  "Accordingly, an arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement."  Id.  Carroll's petition challenges the award under section 10(a)(4), but his memorandum does not cite any legal or factual support for his claim.  Based on this record, Carroll does not allege either of the permitted grounds under section 10(a)(4).

"[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11" of the FAA.  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9).  Carroll "has identified no basis" sufficient to

vacate the award, Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 78–79 (2d Cir. 2012), and for reasons described above, there is at least "a barely colorable justification for the outcome reached." D.H. Blair, 462 F.3d at 110 (internal quotations omitted). Accordingly, Carroll's petition to vacate is denied, and Wells Fargo's cross-petition to confirm the award is granted.

II. Wells Fargo's application for attorneys' fees is granted.

Pursuant to the terms of the promissory note, Wells Fargo seeks $17,019 in attorneys' fees for work done after the entry of the arbitration award, including litigating this action. Paragraph 4 of the promissory note provides:

> [Carroll] agree[s] to pay all reasonable costs and expenses incurred by or on behalf of [Wells Fargo] in connection with its exercise of any or all of its rights and remedies relating to the validity, enforcement or construction of, this Note, including, without limitation, all attorneys' fees and expenses incurred by [Wells Fargo] in any action to enforce the Note.

(Note ¶ 4).

Carroll did not file an opposition to the application for attorneys' fees. In any event, the district court has discretion to determine reasonable attorneys' fees but "must abide by the procedural requirements for calculating those fees." Millea v. Metro-North R.R. Co., 658 F.3d 154, 167 (2d Cir. 2011). The Court determines the lodestar or "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours expended on the action. Id. at 167.

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). The relevant rates "are the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (internal quotation marks and citation omitted). The Court should also consider "*all of* the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the twelve factors enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989).[2] Arbor Hill, 522 F.3d at 190 (emphasis in original).

Bradley Mitchell, counsel for Wells Fargo from the law firm Stevens & Lee, P.C., has submitted a declaration in support of the application for attorneys' fee. Mitchell attests that three attorneys from Stevens & Lee have billed 95.9 total hours "to collect on the Arbitration Award, including on the Petition to Confirm" from March 30, 2020 through September 30, 2020. (Mitchell Decl. ¶ 19). Stevens & Lee billed Wells Fargo at the following rates: (1) Bradley L. Mitchell, a shareholder with approximately 30 years of experience, billed 0.6 hours at $336 per hour; (2) Megan M. Christensen, a shareholder with approximately 16 years of experience, billed 23.8 hours at $268 per hour; and (3) Yio Kyung Lee, an associate with approximately 3 years of experience, billed 71.5 hours at $146 per hour. (Mitchell Decl. ¶¶ 21–23).[3]

The rates charged by Wells Fargo attorneys are reasonable as compared to the rates approved by other courts in this district for confirmation and vacatur proceedings involving FINRA arbitration. See Gelman v. Borruso, 19-cv-10649 (RA), 2021 WL 516881, at *2 (S.D.N.Y. Feb. 11, 2021) (rate of $500 per hour for partner was reasonable); Rubenstein v.

---

[2] "The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186, n.3 (citing Johnson, 488 F.2d at 717-19).

[3] The Mitchell Declaration provides the number of hours billed and the total dollar amount for each attorney. The Court has calculated the hourly rate charged based on this information.

10

Advanced Equities, Inc., 13-cv-1502 (PGG), 2015 WL 585561, at *6–8 (S.D.N.Y. Feb. 10, 2015) (rates of $525 per hour for partners and $350 per hour for associates were reasonable). The hourly rate for Ms. Lee, an associate with approximately three years of experience who performed the majority of the work, is also consistent with prevailing rates in the community. See, e.g., Santos YMY Mgmt. Corp., 20-cv-1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021) (hourly rates of $275 to $300 for associates with three to five years of experience was reasonable); Hernandez v. JRPAC Inc., 14-cv-417 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan 6, 2017) (hourly rate of $250 for associates with 3-4 years of experience was reasonable).

The Court concludes that the hourly rates requested by Wells Fargo and hours expended are reasonable.

CONCLUSION

Petitioner Carroll's motion to vacate the award (Doc 4) is DENIED. Respondent Wells Fargo's cross-motion to confirm the award (Doc 15) is GRANTED. The Clerk shall enter final judgment for Respondent Wells Fargo in the amount $715,654.41 plus attorneys' fees and costs in the amount of $17,019.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 17, 2021